# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Maria Lydia Martinez, *on behalf of herself and all others similarly situated*, | Civil Action No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Volkswagen Group of America, Inc., | |
| Defendant. | |

Plaintiff Maria Lydia Martinez, by undersigned counsel, brings the following Class Action Complaint against Defendant Volkswagen Group of America, Inc. ("Defendant" or "VW"), and alleges, on her own behalf and on behalf of all those similarly situated, as follows:

## INTRODUCTION

1.      Plaintiff brings this lawsuit on behalf of herself and a proposed class of past and present owners and lessees of defective 2022-2023 Volkswagen Tiguan vehicles containing the EA888 2.0-liter TSI engine ("EA888 ") model engine (collectively the "Class Vehicles") marketed, distributed, sold, warranted, and serviced by Defendant.

2.      Plaintiff and the Class were damaged because the Class Vehicles contain defective EA888 engine that consumes excessive amounts of engine oil between regularly scheduled service visits (the "Oil Consumption Defect" or the "Defect").  Specifically, as a result of defective piston rings in the EA888 engine, oil passes into the cylinder combustion chamber where it burns off.

3.      Prior to selling the Class Vehicles to Plaintiff and class members, Defendant knew that the Class Vehicles' EA888 engine contained a safety defect causing excessive oil

consumption.  As a result of the Defect, Class Vehicle owners frequently need additional quarts of oil between scheduled changes to prevent catastrophic engine damage or failure.

4.      The Oil Consumption Defect poses an extreme safety hazard to drivers and other operators because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted. Therefore, this Oil Consumption Defect is unreasonably dangerous because it can cause engine failure while the Class Vehicles are in operation at any time and under any driving conditions or speeds, thereby exposing the Class Vehicle drivers, their passengers, and others who share the road with them to serious risk of accidents and injury.

5.      To date, VW has failed to correct the safety defect under VW's warranty, requiring that Class Vehicle owners continue to operate their vehicles with the safety defect. Indeed, VW has not issued any adequate repairs to its dealers, has not issued a safety recall, and at most VW dealers top up engine oil level whenever consumers present their vehicles seeking warranty repairs.

6.      Despite having pre-sale knowledge of the Defect, VW failed to disclose it to Plaintiff and other class members at the time of purchase or lease.  Had it done so, Plaintiff and class members would not have purchased the Class Vehicles or would have paid substantially less for them.

7.      VW's conduct is in violation of the Georgia Fair Business Practice Act, Ga. Code Ann., § 10-1-393, *et seq.*, and constitutes fraudulent concealment, unjust enrichment, and a breach of express and implied warranties.

8.      VW has and will continue to benefit from its unlawful conduct – by selling more vehicles, at a higher price, and avoiding warranty obligations – while consumers are harmed at

the point of sale as their vehicles continue to suffer from the unremedied Oil Consumption Defect.

9.     To remedy VW's unlawful conduct, Plaintiff, on behalf of herself and putative class members, seeks damages and restitution from VW, as well as notification to class members about the defect.

## **PARTIES**

10.     Plaintiff Maria Lydia Martinez ("Ms. Martinez " or "Plaintiff") is an adult individual residing in Loganville, Georgia.

11.     Defendant Volkswagen Group of America, Inc., is a New Jersey is a New Jersey corporation doing business throughout the United States.  VW's corporate headquarters is located in Herndon, Virginia.  Defendant is in the business of marketing, supplying, and selling motor vehicles accompanied by written warranties to the public at large through a system of authorized dealerships.

12.     At all times herein mentioned,  Defendant reviews and analyzes warranty data submitted by Defendant's dealerships and authorized technicians in order to identify defect trends in vehicles.  Upon information and belief,  Defendant dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendant with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendant decides to audit the dealership. Defendant uses this information to determine whether particular repairs are covered by an applicable VW warranty or are indicative of a pervasive defect.

13.     Defendant also developed the marketing materials to which Plaintiff and the Class were exposed, owner's manuals, informational brochures, warranty booklets, and information

included in maintenance recommendations and/or schedules for the Class Vehicles, all of which fail to disclose the Oil Consumption Defect.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Class Members, and Defendant are citizens of different states.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because VW is incorporated in New Jersey, and VW has marketed, advertised, sold, and/or leased the Class Vehicles within this District through numerous dealers doing business in the District. Defendant's actions have caused harm to thousands of members of the Class residing in New Jersey. VW maintains the following offices and/or facilities in New Jersey: (1) the "VW/Audi/VCI Eastern Region" location in Woodcliff Lake, New Jersey; (2) the "VW/Audi Test Center" in Allendale, New Jersey; (3) the "Product Liaison Office" in Fort Lee, New Jersey; (4) and the "Parts/Region Distribution Center" in Cranbury, New Jersey.[1]  Accordingly, Defendant has sufficient contacts with this District to subject Defendant to personal jurisdiction in the District and venue is proper.

## FACTUAL ALLEGATIONS APPLICABLE TO INDIVIDUAL PLAINTIFF

16.     On or about November 25, 2022, Ms. Martinez purchased a new 2023

---

[1] *See Volkswagen Group of America Locations*, VOLKSWAGEN GROUP OF AMERICA, http://www.volkswagengroupofamerica.com/locations  (last visited January 7, 2025).

Volkswagen Tiguan containing the EA888 engine, Vehicle Identification Number 3VV3B7AX3PM011305 (hereafter the "Martinez Vehicle") from Stone Mountain Volkswagen in Snellville, Georgia (hereafter "Stone Mountain Volkswagen"), Defendant's authorized dealership.

17.    Passenger safety and reliability were important factors to Ms. Martinez's decision to purchase the vehicle. Prior to purchasing the 2023 Volkswagen Tiguan, Ms. Martinez visited Stone Mountain Volkswagen where she inspected the vehicle.  Based on Stone Mountain Volkswagen's representations, Ms. Martinez was led to believe that the 2023 Volkswagen Tiguan was, among other things, a safe, reliable, and high-quality vehicle.

18.    Prior to the purchase, Stone Mountain Volkswagen assured Ms. Martinez that the Martinez Vehicle was accompanied by VW's New Vehicle Limited Warranty.

19.    VW's New Vehicle Limited Warranty VW "covers any repair to correct a defect in manufacturer's material or workmanship" without charge within 4 years or 50,000 miles in service, whichever occurs first.

20.    Neither VW nor the selling dealership ever disclosed at the time of purchase that the 2023 Volkswagen Tiguan contained the Oil Consumption Defect. Indeed, VW concealed this information from consumers, and Ms. Martinez was not aware of, and did not have any reason to anticipate, that her vehicle was afflicted by the Oil Consumption Defect when she purchased the vehicle.

21.    VW's omissions were material to Ms. Martinez.  If VW had adequately disclosed these facts before Ms. Martinez purchased the vehicle, she would have learned of the concealed information and would not have bought the vehicle had she known the vehicle suffered from the Oil Consumption Defect, or would have paid substantially less for it.

22.     Following delivery, and having driven her vehicle about 2,500 miles, Ms. Martinez noticed a warning in the vehicle's instrument cluster stating engine oil level was low.

23.     Ms. Martinez then promptly returned her vehicle to Stone Mountain Volkswagen and complained about the low engine oil level warning.  In response, Stone Mountain Volkswagen told Ms. Martinez it was "normal" for her vehicle's engine to consume oil, and added oil to the Martinez Vehicle engine.

24.     Following that visit, and having driven her vehicle for about 2,000 miles, the same low engine oil level warning returned.

25.     Again, Ms. Martinez promptly returned her vehicle to Stone Mountain Volkswagen and complained about the low engine oil level warning.  In response, Stone Mountain Volkswagen told Ms. Martinez again that it was "normal" for her vehicle's engine to consume oil, and added oil to the Martinez Vehicle engine.

26.     Following that second visit, and about 2,000 miles later, the same low engine oil level warning returned; Ms. Martinez took her vehicle back to Stone Mountain Volkswagen who topped up engine oil level and told her such consumption of engine oil was "normal."

27.     Subsequently, Ms. Martinez returned her vehicle to Stone Mountain Volkswagen four more times, with an interval of about 2,000 miles, complained about the same low engine oil level warning.  During each such visit, Stone Mountain Volkswagen topped up engine oil level and continued to reassure Ms. Martinez that such consumption of engine oil was "normal."

28.     To date, having driver the Martinez Vehicle about 13,000 miles, the vehicle's engine remains unrepaired and continues to consume oil, and impedes Plaintiff's ability to safely operate the Martinez Vehicle.

## FACTUAL ALLEGATIONS APPLICABLE TO PLAINTIFF AND THE CLASS

### I.    The Oil Consumption Defect

29.    VW has sold tens of thousands of 2022-2023 Class Vehicles equipped with the EA888 is 2.0-liter turbocharged direct fuel injection engine across the United States and in Georgia.

30.    The Class Vehicles are notorious for consuming excessive amounts of oil and frequently need additional quarts of oil between scheduled changes to prevent catastrophic engine damage or failure.

31.    EA888 is a four cylinder engine, that uses a piston in each cylinder to convert pressure created by air-fuel mixture combustion into rotating motion.

32.    Piston rings are mounted around the circumference of a piston inside the engine's cylinder.  The top two piston rings, called compression rings, create a tight seal between the piston and the cylinder wall, preventing the escape of combustion gases during the power stroke. This ensures maximum compression, which is critical for the turbocharged EA888 engine to maintain its high power output and fuel efficiency, as poor sealing will result in power loss and increased emissions.

33.    The third ring, called oil control ring, scrapes excess oil from the cylinder walls during the piston's downward stroke, ensuring that only a thin lubricating film remains. This prevents oil from entering the combustion chamber and being burned, which would result in increased oil consumption and emissions.

34.    Additionally, the oil control ring helps maintain a consistent lubricating oil film between the piston and cylinder wall, reducing friction and wear.

35.     However, as a result of manufacturing defects and/or use of deficient materials, the piston rings in EA888 engines have insufficient tension that compromises their ability to maintain proper contact with the cylinder wall and allows oil to pass into the cylinder combustion chamber where it burns off.

**II.     The Oil Consumption Defect Causes Increased Emissions**

36.     In addition, defective piston rings increase emissions in the Class Vehicles' engines due to their inability to properly seal the combustion chamber, control oil consumption, and prevent blow-by.

37.     First, defective piston rings allow high-pressure combustion gases to leak past the piston and into the crankcase.  These gases often include unburned hydrocarbons, carbon monoxide, and oxides of nitrogen, which are then vented into the atmosphere through the engine's Positive Crankcase Ventilation (PCV) system, and which contribute to increased exhaust emissions.

38.     Second, the loss of compression caused by defective piston rings reduces the efficiency of combustion, leading to incomplete burning of the air-fuel mixture.  This, in turn, produces higher levels of unburned hydrocarbons and carbon monoxide in the exhaust.

39.     Third, as a result of defective piston rings, excess oil bypasses the rings and enters the combustion chamber, where it burns along with the air-fuel mixture.  Burning oil produces blue-gray smoke in the exhaust and releases harmful pollutants, such as partially burned or unburned fuel, and small particles resulting from the burning of oil.

40.     Fourth, defective piston rings allow more blow-by gases, including unburned hydrocarbons, to enter the crankcase.  These gases are recirculated into the intake system via the

PCV system, re-entering the combustion chamber.  This in turn disrupts the air-fuel ratio and cause incomplete combustion, further increasing emissions.

41.    Further, blow-by gases mix with engine oil in the crankcase, reducing its lubricating effectiveness and accelerating wear.  Additionally, contaminated oil leads to more frequent oil burning, amplifying emissions.

## III.    VW's Knowledge of the Defect

42.    The engine oil consumption problem has plagued VW vehicles for decades.

43.    For example, on December 10, 2008, VW issued a Technical Service Bulletin ("TSB") No. 17-08-03 applicable to 2000-2010 model year vehicles (with the exception of the Routan).  VW acknowledged customer complaints of high oil consumption that may exceed VW's oil consumption standard.  TSB further states that "If the customer complains that their engine is apparently consuming oil in excess of the Volkswagen oil consumption standard above, an oil consumption test must be performed … ."   VW further requires its dealers to contact its Technical Assistance Center (TACS) to obtain authorization for an oil consumption related repair.

44.    However, despite its knowledge of the Defect as evidence by this TSB, under the "Product Solution" section VW offers no solution, stating instead "Not applicable."

45.    Given the time it takes VW to gather relevant data, compile relevant consumer complaints and investigate such engine oil consumption complains, and then prepare and release the above TSB to its authorized dealerships, the December 10, 2008 TSB No. 17-08-03 establishes VW had knowledge of the Oil Consumption Defect affecting the vehicles it sold accompanied by its express warranties prior to December of 2008.

46.     Subsequently, on November 5, 2020, VW issued a revised TSB No. 17-18-06, where it expanded TSB application from 2000 to 2021 model year vehicles (with the exception of the Routan).  Just like in TSB No. 17-08-03, in this bulletin VW acknowledged customer complaints of high engine oil consumption.  Further, in the updated bulletin VW instructs its dealers to inspect the engine for any signs for oil leaks before performing an oil consumption test.  VW further requires its dealers to contact its Technical Assistance Center (TACS) to obtain authorization for an oil consumption related repair, but under the "Product Solution" section VW offers no solution, stating instead "Not applicable."

47.     On March 14, 2022, VW updated its TSB No. 17-18-06, where it expanded bulletin application from 2000 to 2022 model year vehicles (with the exception of the Routan and ID.4).

48.     Similarly, on September 18, 2024, VW updated its TSB No. 17-18-06, where it expanded bulletin application from 2000 to 2025 model year vehicles (with the exception of the Routan and ID.4).

49.     Therefore, before VW sold Plaintiff her Class Vehicle, VW was on notice that the Class Vehicles suffered from the Oil Consumption Defect, however VW failed to disclose the existence of the defect to Plaintiff or any other Class Vehicle owners.

50.     VW had and has a duty to fully disclose the true nature of the Oil Consumption Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because VW had and has exclusive knowledge or access to material facts about the Class Vehicles' engines propensity to consume oil excessively that were and are not known to or reasonably discoverable by Plaintiff and the other Class

Members; and because VW has actively concealed the Oil Consumption Defect from its customers.

**IV.    The NHTSA Complaints and Online Discussions of the Defect**

51.    Upon information and belief, thousands of purchasers and lessees of the Class Vehicles have experienced the Oil Consumption Defect.  Given how widespread the issue is and the fact that Oil Consumption Defect manifests within months of the Class Vehicles sale, Class Vehicle owners have been complaining about the Oil Consumption Defect and posting such complaints online since at least June 2022.

52.    Automobile manufacturer and distributors, including VW, regularly monitor social media for vehicle owners concerns.  Upon information and belief, VW maintains presence on and regularly monitors social media for such content too, has done so since it began selling the Class Vehicles, and published social media user guidelines on its website.[2]

53.    Through its monitoring of social media, VW learned about the Defect.

54.    For instance on www.vwvortex.com, a Volkswagen vehicle enthusiast website that upon information and belief VW regularly monitors, in June 28, 2022 post a Class Vehicle owner complained the oil level light came on in his '22 Tiguan with 7200 miles on it, and it was a quart and a half low.[3]  In response, other owners reported getting low oil level notifications, with one owner getting low oil message at just 4,900 miles.

55.    On Reddit, Class Vehicle owners also shared that they had near-identical

---

[2] https://www.vw.com/en/terms.html (last visited January 7, 2025).
[3] https://www.vwvortex.com/threads/check-your-oil-levels.9508414/ (last visited January 7, 2025).

experiences of having to top off engine oil in between oil service intervals.[4]  Similarly, in another Reddit post a 2023 Tiguan owner complained of consistently needing to add oil every 2500-3000 miles, and that he took his car to the dealer 6-7 times seeking repair, only to be told every time such consumption is "normal."[5] In response, several other owners shared experiencing the very same issue with their 2023 Tiguan vehicles.

56.    Moreover, VW monitors customers' complaints made to the National Highway Traffic Safety Administration ("NHTSA"). Federal law requires automakers like VW to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

57.    Automakers also have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Reporting Requirements. *Id*. Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id*.  Thus, VW knew or should have known of the many complaints about the Oil Consumption Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, VW to the Oil Consumption Defect.

---

[4] https://www.reddit.com/r/Tiguan/comments/13dxo5h/2022_vw_tiguan_se_oil_consumption/?rdt=64340 (last visited January 7, 2025).
[5] https://www.reddit.com/r/Volkswagen/comments/1brljr7/issue_with_my_2023_tiguan_oil_consumption/ (last visited January 7, 2025).

58.    The below example complaints concerning the Class Vehicles, filed by consumers

with the NHTSA and posted on the Internet, which on information and belief VW actively

monitored during the relevant time period, demonstrate that the Defect is widespread and

dangerous, and that VW has known about the defect at all relevant times:

- NHTSA Complaint No. 1689147 (2018 Volkswagen Tiguan), September 2, 2020:
  I GOT A NEW JOB WITH A SIGNIFICANT RAISE AND WAS SO HAPPY I
  REWARDED MYSELF WITH A BRAND NEW 2018 VW TIGUAN (SEL
  PREMIUM R-LINE). BESIDES SOME SEEMINGLY INCONSISTENT
  HESITATION WHEN TAKING OFF FROM START, THE CAR HAS A
  GREAT RIDE, THE STEERING IS GERMAN AND LIKE NO OTHER. THE
  ADAPTIVE CRUISE CONTROL SAVES ME SO MUCH STRESS ON MY 40
  MINUTES DRIVE INTO WORK. SOUND GREAT RIGHT? WELL, IT WAS,
  UNTIL....I GOT MY FIRST OIL CHANGED ON TIME, LIKE I SHOULD,
  THEN AT ~14,500 MILES IN MAY 2020, MY LOW OIL LEVEL LIGHT
  CAME ON. I CHECKED THAT THERE WERE NO VISIBLE OIL LEAKS IN
  THE DRIVEWAY OR UNDER THE CAR, THERE WEREN'T. I CALLED
  THE DEALER TO CONFIRM I WASN'T NUTS AND THAT MY OIL WAS
  CHANGED ~4,000 MILES AGO. THEY SAID I SHOULD ADD OIL, THAT
  IT'S NORMAL FOR VOLKSWAGEN'S TO BURN THROUGH A LOT OF
  OIL. SO I ASKED WHAT TYPE OF OIL WAS USED IN THE CAR SO I
  COULD BUY THE SAME TYPE. THIS WAS VERY ALARMING THAT I
  WAS ADDING OIL TO A CARE WITH ONLY ~14,500 MILES. I THOUGHT,
  OKAY, MAYBE THEY DIDN'T ACTUALLY CHANGE MY OIL, MAYBE
  IT'S A FLUKE. SO I ADDED THE OIL AND THE LOW OIL LEVEL LIGHT
  TURNED OFF, SO I PROCEEDED DRIVING IT AS NORMAL. NOW, I'VE
  BEEN WORKING FROM HOME DUE TO COVID-19 SO I'VE BEEN
  DRIVING VERY MINIMALLY. I PUT ~1000 MILES ON THE CAR SINCE
  ADDED OIL AND THE LOW OIL LIGHT CAME ON AGAIN ON 8/28/2020. I
  PARKED THE CAR AND CALLED AND MADE A SERVICE
  APPOINTMENT AT THE DEALERSHIP. I DIDN'T DRIVE IT ALL ALL
  OVER THE WEEKEND, THEN TOOK IT IN ON 8/31/2020. THE SERVICE
  GUY CHECKING ME IN TOLD ME "VW CONSIDERS IT ACCEPTABLE
  FOR THEIR CARS TO BURN THROUGH A QUART OF OIL EVERY 1,000
  MILES." YOU HAVE TO BE KIDDING ME. THIS CAR DOESN'T EVEN
  HAVE 16,000 MILES ON IT YET. THIS IS NOT OKAY AND NOT NORMAL.
  SO HERE I SIT ON 9/2/2020. THE DEALERSHIP STILL HAS MY TIGUAN

AND ARE RUNNING WHAT THEY SAY IS A NEW SERIES OF TESTS TO CHECK WHAT COULD BE CAUSING THE CAR TO BURN OIL.

- NHTSA Complaint No. 1693982 (2020 Volkswagen Tiguan), September 21, 2020: BOUGHT CAR ON 4/6/ 2020 BRAND NEW AT 2600 MILES OIL LITE CAME ON  I CHECKED AND IT NEEDED 1 QUART.I WENT TO DEALER THEY CHECKED IT AND ADDED 1 QUART AND TOLD ME TO COME BACK WHEN IT HAPPENS AGAIN . I CHECK IT EVERY WEEK AND NOW 9/21/20 IT IS ADD THE ADD POINT ON THESTICK  ODOMETER NOW AT 3800 MILES. THIS HIGH CONSUMPTION IS TO MUCH.THE LIGHT HAS NOT COME ON YET BUT I DONT LIKE RUNNING IT DOWN TO THE BOTTOM OF THE STICK. I HAD A 2019 TIGUAN AND IT NEVER NEEDED OIL AND HAD OVER 8000 MILES ON IT.I BELIEVE THEY MADE CHANGES TO THE ENGINE AND IM NOT HAPPY WITH IT .THEY NEED TO DO SOMETHIG ABOUT IT SOON. I ALSO HAD A 2014 PASSAT THAT NEVER USED OIL.  NO HELP FROM DEALER EXCEPT TO PUT A QUART IN.QUIRK  VW QUINCY MA.

- NHTSA Complaint No. 1732554 / 1732555 (2018 Volkswagen Tiguan), March 10, 2021: WE HAVE SAME ISSUE WITH OUR 2018 TIGUAN AS MANY OTHER PEOPLE OUT THERE. AFTER OUR FIRST OIL CHANGE WE HAD ENGINE OIL LIGHT CAME ON.  DID NOT REPORTED TO DEALER TILL AFTER SECOND OIL CHANGE. THEY CHECKED FOR POSSIBLE LEAKS AND PUT US ON OIL CONSUMPTION TEST FOR LITTLE OVER 600 MILES. THEY COULDN'T FIND ANYTHING AND TOLD US TO KEEP EYE ON IT.  WE ARE ON 3RD OIL LIGHT SO, THEY NOW PUT US ON SECOND OIL CONSUMPTION TEST.  I OWNED MANY VW INCLUDING 2019 JETTA WE BOUGHT FOR MY SON AND NEVER HAD ANY ISSUES WITH BURNING OIL.   I READ MANY COMPLAINTS AND ISSUES ABOUT BURNING OIL ON VW ENGINES, SO I REACHED OUT TO SOMEONE THAT I KNOW AND SPECIALIZED IN EUROPEAN CARS.  I ASKED MY FRIEND AND MULTIPLE MECHANICS AND THEY TOLD ME THAT THIS IS NOT NORMAL AND THAT IT WILL GET WORSE WERE IT WILL BURN MORE OIL. I WAS ALSO INFORMED THAT VW KNOWS THAT THEY HAVE ISSUES WITH THESE ENGINES,SOMETHING WITH BAD CYLINDER SEALS AND THEY CANNOT FIGURE IT OUT FOR LAST 12 YEARS HOW TO FIX IT AND WOULD NOT ADMIT IT.  I GUESS THIS DOESN'T HAPPENS WITH EVERY CAR, BUT WHEN IT HAPPENS THEY TELL CUSTOMERS THAT IS NORMAL.  THIS IS BS AND SOMEONE NEEDS TO DO SOMETHING ABOUT IT.   NO ONE FROM SERVICE DEPARTMENT HAVE NOT TOLD ME ANYTHING SO FAR AND I HOPE

AFTER SECOND OIL CONSUMPTION TEST THAT THEY DO NOT COME TO ME A SAY IT. THAT WOULD BE BAD. WE HAVE SERVICE REPORT WHEN WE BROUGHT A CAR FOR FIRST TIME WE REPORTED THIS ISSUE AND THERE IS NOTHING STATING THAT THIS IS NORMAL FOR ENGINE TO CONSUME( BURN) OIL. IF THIS IS A NORMAL WITH THEIR ENGINES THEY SHOULD INFORM AND EDUCATE THEIR CUSTOMERS WHEN THEY ARE BUYING THIS CAR TO KEEP EYE ON OIL AND KEEP ADDING AFTER CERTAIN MILES.   NOT EVERY CAR HAS THIS ISSUE, IT IS CASE BY CASE AND THAT IS WHAT TELLS ME THAT THIS IS NOT NORMAL.   WE WERE THINKING TO KEEP THIS CAR BUT NOW AFTER WHAT I LEARNED WILL NEVER GET ANOTHER VW.   PLEASE HELP...

- NHTSA Complaint No. 11565944 (2022 Volkswagen Tiguan), January 2, 2023: Vehicle has been using oil since it has approx 15k miles. Engine now has 35000 miles and uses all of its engine oil before its next sched maint. Have told dealer numerous times, oil consumption test revealed it uses .61 quarts per 1000 miles, but this is normal per VW. What !?!?. VW states to change oil every 10,000 miles, it will be gone and engine will have no oil remaining within the sched maint. Have also contacted VW directly. Also blows blue smoke at start up at times. Engine is junk. Vehicle will have cost over $1000 per mile to own. Dealer and VW keep telling us to just check oil, its normal. I also own a 2003 pontiac vibe with 220k miles, it doesn't do this! I used to be an ASE certified mechanic. This is NOT normal. Car also has the typical hesitation on cold acceleration that is common (look it up), I will file separate complaint. And now p2402 code for an emissions issue. Problems adding up fast and no help from VW or VW dealers.

- NHTSA Complaint No. 1866428 / 1866429 / 1866430 (2020 Volkswagen Tiguan), January 19, 2023: This car burns oil. I am adding at 1-2 quarts of oil every 2-3 months and I only have 24k miles on this car. I've had an oil consumption test completed and they said that its falling just with in normal limits. It's unacceptable. Additionally, the emergency braking system is faulty, it will register shadows or on a slightly winding road will register on coming traffic and slam on brakes. I have had cars blowing their horns and swerving from behind me in order to avoid a collision. I had that check as well and their advise was to disable it. WHAT?!? So either I disable a safety system or I get rear-ended. This is a joke and completely unacceptable.

- NHTSA Complaint No. 11590261 (2022 Volkswagen Tiguan), May 3, 2023: My vehicle low oil light cane on and I had just had the oil changed less than 2,000 miles. Took it to local dealership, they stated 2 seals needed to be replaced, they replaced them and stated I should be good but check the oil every so often to

make sure. 500 miles goes by I need at least 1 qt of oil, took it back to dealership now they say I need a whole new Head and it is a common problem. They have done about 3-4 in 2024! I feel like that's a safety concern but they don't.

- NHTSA Complaint No. 11549749 (2022 Volkswagen Tiguan), May 8, 2023: Oil light went on in May, 2023, at approximately 15K miles, then again in August 2023, at approximately 17,500 miles.  Both times the oil was down 1 quart.  We have been seeing smoke come out of the exhaust, intermittently.   VW service department did a oil consumption test which resulted in the car burning just under a quart of oil after 600 miles.  They said the car is functioning normally, but if it burned over a 1/2 quart of oil, they would do something, but not sure what they would do.  They have not addressed the "smoke coming out of the exhaust" issue.

- NHTSA Complaint No. 1895606 (2020 Volkswagen Tiguan), May 19, 2023: The vehicle burns oil. When the dealer was confronted they said it was 'normal' for the car to burn half a quart of oil every 2000 miles. No oil stains on the ground. The engine is burning the oil.

- NHTSA Complaint No. 1924912 / 1924913 / 1924914 (2022 Volkswagen Tiguan), September 19, 2023: I bought this brand new Tiguan in July 2022. The engine is either leaking or burning engine oil. I have the check engine oil level light on around every 2000-3000 miles. I had been to the dealer several times. They just inspect for leak and added engine oil. The problem still exist. The dealer stated that my car needs oil change every 10k miles. I am going back every 2-3 k miles for engine oil. There is something wrong with the engine. It is burning or consuming the engine oil. Another problem i have is the wheel or the brakes. When I was braking at above 60 miles per hours, there is a strong vibration on the wheel or brakes.

- NHTSA Complaint No. 1940044 (2021 Volkswagen Tiguan), November 3, 2023: My car is a 2021 Tiguan. Car is burning oil and should not be.

- NHTSA Complaint No. 11562466 (2022 Volkswagen Tiguan), December 28, 2023: Car uses lots of oil between oil changes 1 1/2 quart in between suggested change intervals.

- NHTSA Complaint No. 1992795 (2023 Volkswagen Tiguan), May 21, 2024: VW Dealership in West Lebanon NH is acknowledging that there is an issue with VW Tiguan engines burning oil at a higher rate than the standard.  The fuel low indicator keeps coming on. They advise me to add oil which is coming out of my pocket vs theirs under warranty.  I've had two appointments. They are now doing a fuel consumption test and I have to return for a 3rd appointment. They stated

16

they are seeing a lot more folks like myself coming in with lower mile Tiguan with this issue. Normally they are seeing many with 50K + miles. While I was there another customer overheard the service adviser talking to me and he said he has the same issue. Blue puffs of smoke coming out of the back too when we start car. Seems like this is a huge issue that is now coming to light. Dealership told me i'm at a stage 2 with VW and next steps is taking engine apart and warning VW of issue..

- NHTSA Complaint No. 1996207 (2022 Volkswagen Tiguan), June 4, 2024: The contact owns a 2022 Volkswagen Tiguan. The contact stated that while driving at an undisclosed speed, he observed excessive smoke coming from the exhaust pipes. The low oil warning light was illuminated. The vehicle was taken to the dealer, who diagnosed a failure with the valve steam seals. The vehicle was repaired, but the failure reoccurred. The vehicle was taken back to the dealer, who then diagnosed a failure with the fuel vapor leak detection pump. The vehicle was repaired, but the failure reoccurred. The manufacturer was notified of the failure but provided no assistance. The failure mileage was 1,000.

- NHTSA Complaint No. 2017204 (2023 Volkswagen Tiguan), August 20, 2024: Vw tiguan 2023 consume a lot of engine oil every 2000 and 3000 mile the oil engine light turn on and it shows that oil level is low and that 2nd time happens since I bought the car in 01/2023 the service manager in vw las vegas sahara told me that normal every 3000 mile you have to add oil I told him that new car not 20 years old car so he told me that how it is can you please investigate the issue now I scare to drive far and there is a lot complain online about the issue thank you.

- NHTSA Complaint No. 2036727 (2022 Volkswagen Tiguan), November 1, 2024: The contact owns a 2022 Volkswagen Tiguan. The contact stated that while driving at various speeds on several occasions, there was an abnormal amount of white smoke coming from the rear of the vehicle. The check engine and oil warning lights were illuminated. Additionally, the message "Add oil to the Engineâ€• was displayed. The vehicle was taken to a dealer to be diagnosed. The contact was informed that the cylinder head needed to be replaced and that oil needed to be added every month due to excessive oil consumption. The manufacturer was not notified of the failure. The failure mileage was approximately 36,000.

- NHTSA Complaint No. 11627427 (2022 Volkswagen Tiguan), November 26, 2024: ever since purchasing the car in 2021 I noticed it burns oil very quickly. Every time i would bring my car to my local body show before an oil change was

do there was always no oil left. I finally brought the car back to VW and they told me it could be the shop was not using the right stuff which i knew was not true and they charged me for oil change and told me to come back if the problem continued. Sure enough 6 weeks later the oil light came on. I brought it back to VW and they told me the car has an engine oil consumption issue and they could keep the car from a week to 6 months.

59.    Although VW was aware of the widespread nature of the Oil Consumption Defect in the Class Vehicles, and that it posed safety risks, VW has failed to take adequate steps to notify all Class Vehicle owners of the Defect and provide relief.

60.    Customers have reported the v in the Class Vehicles to VW directly and through its dealers.  Defendant is fully aware of the Oil Consumption Defect contained in the Class Vehicles.  Moreover, Defendant had the ability to notify Class Vehicle owners about the Oil Consumption Defect  directly and via its authorized dealerships at the time of sale and thereafter. Nevertheless, Defendant actively concealed the existence and nature of the Defect from Plaintiff and the other Class Members at the time of purchase or repair and thereafter.  Specifically, Defendant:

a.    failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Oil Consumption Defect ;

b.    failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their engines were not in good working order, were defective, and were not fit for their intended purpose; and,

c.    failed to disclose and/or actively concealed the fact that the Class Vehicles and their engines were defective, despite the fact that Defendant learned of the Oil Consumption Defect as early as 2008.

61.     Defendant has deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to take other remedial measures related to the Oil Consumption Defect contained in the Class Vehicles.

62.     Defendant has not recalled the Class Vehicles to repair the Oil Consumption Defect, has not issued any bulletins or instructions to its dealerships regarding the Oil Consumption Defect, has not offered to its customers a suitable repair or replacement of parts related to the Oil Consumption Defect free of charge, and has not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs and additional oil purchases related to the Oil Consumption Defect.

63.     Further,  VW refuses to repair the Oil Consumption Defect under its written warranty when given a reasonable opportunity to do so, or its authorized dealerships simply top up engine oil level that fails to cure the Defect.

64.     Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

65.     As a result of the Oil Consumption Defect, the value of the Class Vehicles was worth less money at the time of sale.

66.     Reasonable consumers, like Plaintiff, expect and assume that a vehicle's engine is not defective and will not consume oil excessively in between recommended oil change intervals.  Plaintiff and Class Members further expect and assume that VW will not sell or lease vehicles with known safety defects, such as the Oil Consumption Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair.  They do not expect that VW would fail to disclose the Oil Consumption Defect to them, and then refused to remedy the defect under VW's warranty.

## CLASS ACTION ALLEGATIONS

### A.  *The Class*

67.    Pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(5), Plaintiff

seeks to represent the following class:

> **Nationwide Class:** All persons or entities who purchased or leased any 2022-2023
> Volkswagen Tiguan vehicle.

> **Georgia Sub-Class:** All persons or entities who purchased or leased any any 2022-
> 2023 Volkswagen Tiguan vehicle in the State of Georgia (the "Georgia Class")

68.    Defendant and its employees or agents are excluded from the Class.

### B.  *Numerosity*

69.    Upon information and belief, the Class is so numerous that joinder of all members

is impracticable. While the exact number and identities of individual members of the Class are

unknown at this time, such information being in the sole possession of Defendant and obtainable

by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that

thousands of Class Vehicles have been sold and leased nationwide and throughout Georgia.

### C.  *Common Questions of Law and Fact*

70.    There are questions of law and fact common to the Class that predominate over

any questions affecting only individual Class members.  These questions include:

a.    whether the Class Vehicles suffer from the Oil Consumption Defect;

b.    whether the Oil Consumption Defect constitutes an unreasonable safety hazard;

c.    whether Defendant knows about the Oil Consumption Defect and, if so, how long

   Defendant has known of the Defect;

d.    whether the defective nature of the Class Vehicles' engines constitutes a material

   defect;

20

e.      whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles' engines to Plaintiff and the other Class Members;

f.      whether Plaintiff and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.      whether Defendant knew or reasonably should have known of the Oil Consumption Defect contained in the Class Vehicles before it sold or leased them to Class Members; and

h.      Whether Defendant breached its express warranty and the implied warranty of merchantability, engaged in fraudulent concealment and unjust enrichment, and whether Defendant violated the Georgia Fair Business Practice Act, Ga. Code Ann., § 10-1-393, *et seq*.

### D. *Typicality*

71.    The Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased or leased one of defective Class Vehicles, as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained economic injuries arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

### E. *Protecting the Interests of the Class Members*

72.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor her counsel has any interest which might cause them not to vigorously pursue this action.

**F.    _Proceeding Via Class Action is Superior and Advisable_**

73.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, _inter alia_, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

74.    Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Fraudulent Concealment**
**(On behalf of Plaintiff and the Nationwide Class, or in Alternative Georgia Class)**

75.    Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

76.    By affirmatively misrepresenting the Class Vehicles as durable and tough, and by failing to disclose and concealing the defective nature of the Class Vehicles' engines from

Plaintiff and Class Members, VW concealed and suppressed material facts concerning the performance and quality of the Class Vehicles.

77.    Defendant knew that the Class Vehicles' engines suffered from an inherent defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

78.    Defendant was under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles' engines and/or the associated repair costs because:

    a.    Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' engines;

    b.    Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively manufactured, and were not suitable for their intended use;

    c.    Plaintiff and the Class Members could not reasonably have been expected to learn or discover that their engines have a dangerous safety defect until after they purchased the Class Vehicles; and,

    d.    Defendant knew that Plaintiff and the Class Members could not reasonably have been expected to learn about or discover the Oil Consumption Defect.

79.    On information and belief, VW still has not made full and adequate disclosures and continues to defraud consumers by concealing material information regarding the Oil Consumption Defect and the performance and quality of Class Vehicles.

80.    The facts concealed or not disclosed by Defendant to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

81.    Plaintiff and Class Members relied on Defendant to disclose material information it knew, such as the defective nature of the engines in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

82.    By failing to disclose the Oil Consumption Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

83.    The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

84.    Had Plaintiff and other Class Members known that the Class Vehicles suffer from the Oil Consumption Defect, they would not have purchased the Class Vehicles or would have paid less for them.

85.    Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Oil Consumption Defect.  That is the reasonable and objective consumer expectation for vehicles.

86.    As a result of Defendant's misconduct, Plaintiff and the other Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement parts and are worth less money because of the Defect.

87.    Accordingly, VW is liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

88.    VW's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being, to enrich VW.  VW's conduct warrants an assessment of punitive damages in an amount

sufficient to deter such conduct in the future, which amount is to be determined according to proof.

89.     Furthermore, as the intended and expected result of its fraud and conscious wrongdoing,  VW has profited and benefited from Plaintiff's and Class Members' purchase of Class Vehicles containing the Oil Consumption Defect.  VW has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of VW's misconduct alleged herein, Plaintiff and Class Members were not receiving vehicles of the quality, nature, fitness, or value that had been represented by VW, and that a reasonable consumer would expect.

90.     VW has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiff and Class Members at the expense of these parties. Equity and good conscience militate against permitting VW to retain these profits and benefits, and VW should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

91.     Plaintiff seeks damages and injunctive and equitable relief for herself and for the Class.

**SECOND CAUSE OF ACTION**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Nationwide Class, or in Alternative Georgia Class)**

92.     Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

93.     VW has long known that about the Oil Consumption Defect which it concealed and failed to disclose to Plaintiff and Class Members.

94. As a result of its fraudulent acts and omissions related to the Oil Consumption Defect, VW obtained monies which rightfully belong to Plaintiff and the Class Members to the detriment of Plaintiff and Class Members.

95. VW appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Class Members who, without knowledge of the Oil Consumption Defect, paid a higher price for their vehicles which actually had lower values. VW also received monies for vehicles that Plaintiff and the Class Members would not have otherwise purchased or leased.

96. It would be inequitable and unjust for VW to retain these wrongfully obtained profits.

97. VW's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

98. As a result of Defendant's unjust enrichment, Plaintiff and Class Members have suffered damages.

99. Plaintiff does not seek restitution under their Unjust Enrichment claim. Rather, Plaintiff and Class Members seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

100. Additionally, Plaintiff seeks injunctive relief to compel Defendant to offer, under warranty, remediation solutions that Defendant identifies. Plaintiff also seeks injunctive relief enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendant from selling the Class Vehicles with misleading information concerning the Oil Consumption Defect; compelling Defendant to provide Class Members with adequate repairs or with replacement components that do not contain the defects alleged herein;

and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by

the Court, to cover the injury alleged and to notify all Class Members that such warranty has

been reformed. Money damages are not an adequate remedy for the above requested non-

monetary injunctive relief.

**THIRD CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability Pursuant to the**
**Ga. Code Ann., § 11-2-314**
**(On behalf of Plaintiff and the Nationwide Class, or in Alternative Georgia Class)**

101.    Plaintiff incorporates by reference all allegations contained in this Complaint as

though fully stated herein.

102.    Defendant is a merchant with respect to motor vehicles.

103.    The Class Vehicles were subject to implied warranties of merchantability running

from the Defendant to Plaintiff and to Class Members.

104.    An implied warranty that the Class Vehicles were merchantable arose by

operation of law as part of the sale or lease of the Class Vehicles.

105.    Defendant breached the implied warranty of merchantability in that the Class

Vehicles suffer from the Oil Consumption Defect referenced herein and thus were not in

merchantable condition when Plaintiff and Class Members purchased or leased the Class

Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for

which such vehicles were purchased or leased to be used.  Specifically, the Class Vehicles suffer

from an Oil Consumption Defect, which is a significant safety concern in that it prevents the

Class Vehicles' engines from maintaining the proper level of engine oil, and causes voluminous

oil consumption that cannot be reasonably anticipated or predicted.  Therefore, the oil

consumption defect is unreasonably dangerous because it can cause engine failure while the

subject vehicle is in operation at any time and under any driving conditions or speeds, thereby

27

exposing the subject vehicle's driver, passengers, and others who share the road with them, to serious risk of accidents and injury.

106.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

<u>FOURTH CAUSE OF ACTION</u>
**Breach of Express Warranty under Ga. Code Ann., § 11-2-313**
**(On behalf of Plaintiff and the Nationwide Class, or in Alternative Georgia Class)**

107.    Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

108.    In connection with the sale or lease of the Class Vehicles, Defendant provided Plaintiff and Class Members with its New Vehicle Limited Warranty where it promised to repair defective parts within 4 years or 50,000 miles in service, whichever comes first.

109.    Plaintiff and Class Members relied on Defendant's warranty when they agreed to purchase or lease the Class Vehicles, and Defendant's warranty was part of the basis of the bargain.

110.    Plaintiff and Class Members submitted their vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class Member, by failing to repair the Oil Consumption Defect under the vehicle's warranty within a reasonable period of time as described herein.

111.    Plaintiff and Class Members have given Defendant reasonable opportunity to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

28

112.    As a result of said nonconformities, Plaintiff and Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

113.    Plaintiff and Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff and Class Members' acceptance of the Class Vehicles.

114.    Plaintiff and Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Oil Consumption Defect.

115.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranty, Plaintiff and Class Members have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## FIFTH CAUSE OF ACTION
**Violation of the Georgia Fair Business Practice Act, Ga. Code Ann., § 10-1-393, *et seq.*
(On behalf of Plaintiff and the Nationwide Class, or in Alternative Georgia Class)**

116.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

117.    The sale of the subject vehicles to the Plaintiff and Class Members under the guise that they were free from defects that would substantially impair the use, safety, or value of the Class Vehicles represents an unlawful or deceptive trade practice under Ga. Code Ann., § 10-1-393, *et seq.*

118.    Specifically, and as alleged above, Defendant knew or should have known that the EA888 engine had one or more defects that causes the Class Vehicles to be unable to properly utilize the engine oil and, in fact, to improperly burn off and/or consume abnormally high amounts of oil.  The Oil Consumption Defect decreases the lubrication available to engine parts, which results in premature failure.  As a consequence, the Oil Consumption Defect requires unreasonably frequent oil changes and/or the addition of oil between scheduled oil changes.

119.    The Oil Consumption Defect also is a significant safety concern in that it prevents the Class Vehicles' engines from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted.  Therefore, the Oil Consumption Defect is unreasonably dangerous because it can cause engine failure while the Class Vehicles are in operation at any time and under any driving conditions or speeds, thereby exposing the Class Vehicles' drivers, passengers, and others who share the road with them, to serious risk of accidents and injury.

120.    Defendant acquired knowledge of the Oil Consumption Defect prior to Plaintiff and Class Members acquiring the Class Vehicles, through sources not available to consumers such as Plaintiff and Class Members, including but not limited to early consumer complaints about the Defect made directly to Defendant and its network of dealers, aggregate warranty data compiled from Defendant's network of dealers, testing conducted by Defendant in response to these complaints, as well as warranty repair and parts replacement data received by Defendant from Defendant's network of dealers, amongst other sources of internal information.

121.    While Defendant knew about the Oil Consumption Defect, and its safety risks since 2008, if not before, Defendant nevertheless concealed and failed to disclose the defective

nature of the Class Vehicles and their engines to Plaintiff and Class Members at the time of purchase and thereafter.

122.    By failing to disclose and concealing the defective nature of the EA888 engine from Plaintiff and Class Members, Defendant violated the Georgia Fair Business Practice Act as it represented that the Class Vehicles and their engines had characteristics and benefits that they do not have, and represented that the Class Vehicles and their engines were of a particular standard, quality, or grade when they were of another.

123.    The facts concealed or not disclosed by Defendant to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

124.    Had Plaintiff and Class Members known that the Class Vehicles and their engine were defective at the time of purchase, they would not have purchased the Class Vehicles.

125.    In addition, the Defendant's failure and refusal to repair the Class Vehicles is likewise an unfair and deceptive practice.

126.    Defendant is in the business of selling private automobiles and therefore the violations are likely to affect the general public, now and in the future.

127.    Defendant violated the law willfully and knowingly.

128.    As a result of the Defendant's violations of the law, Plaintiff and Class Members suffered damages.

129.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendant as follows:

a.  An order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

b.  An order awarding Plaintiff and Class Members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

c.  An order awarding Plaintiff and the Class restitution, disgorgement, or other equitable relief as the Court deems proper;

d.  Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

e.  A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

f.  Reasonable attorneys' fees and costs;

g.  Pre-judgment and post-judgment interest, as provided by law;

h.  Plaintiff demands that Defendant perform a recall, and repair all Class Vehicles; and

i.  Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: January 8, 2025

MARIA LYDIA MARTINEZ, *ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED*,

By    /s/ *Sergei Lemberg*

Sergei Lemberg, Esq.
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897
Phone: (203) 653-2250
Fax:    (203) 653-3424
*Attorneys for Plaintiffs*